RECEIVED
MAR - 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**PLAINTIFF / PRO SE**
Djiby Nam
4704 Delaware Street
College Park, MD 20740
(202) 841-3792

vs.                                    CIVIL ACTION NO. 07-cv-00257 (RJL)

**DEFENDANT**
The Oliver Carr Company,
1701 Pennsylvania Avenue, N.W., Suite 300
Washington, DC 20006, Serve Registered Agent: Richard W. Carr, 655 15th Street, N.W., Suite 410, Washington, D.C. 20005

## AMENDED COMPLAINT

1. Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.

2. This complaint is being filed under Title VII of the Civil Rights Act of 1964, the D.C. Human Rights Act, and the Age Discrimination Employment Act.

I demand a trial by jury.

Respectfully submitted by the Plaintiff Djiby Nam

_____
Djiby Nam
4704 Delaware Street
College park, MD 20740

**Certificate of Service:** I hereby certify that the following has been served by certified mail return receipt requested on the Registered Agent for the Oliver Carr Company, Richard W. Carr, at 655 15th Street, N.W., Suite 410, Washington, DC 20005, on Monday, March 11, 2007 and on by certified mail on Scot A. Hinshaw, Hunton & Williams LLP, 1900 K Street, N.W., Washington, DC 20006, on Monday, March 11, 2007.

_____
Djiby Nam

**3. Fact:**

Plaintiff is Black, from Senegal, Africa, and is 51 years old. Plaintiff worked for 4 years for Defendant, as a waiter, under three (3) different General Managers, and over ten (10) Assistant Managers without a single problem. During those 4 years, Plaintiff did not have any disciplinary action in his employee file - not a single write up, nor even a verbal warning. Then came Kathy Kain, Defendant's newly hired General Manager, who for over seven months relentlessly labored to push Plaintiff out of the door, first through discriminatory practices against Plaintiff, and then through numerous retaliations in response to Plaintiff letters of grievances.

In addition, Plaintiff, throughout his 4 years of employment, won Defendant's "Employee of the Month" Contest, month after month, until Kathy Kain, Defendant's newly hired General Manager, put an end to the contest. The prizes consisted of numerous $100 gift certificates as well as dinners for two to fine dining restaurants around the city. The winner was based on quality service performance, customer satisfaction and Plaintiff ability to generate sales for Defendant.

**I. DISCRIMINATION**

First, Plaintiff is a member of a protected class, as he is Black, from Senegal, Africa, and is 51 years old. Second, the record shows that he is overly qualified for the position of Waiter. (1) Defendant decreased Plaintiff's work hours to favor other employees (United States); (2) on June 19, 2001, Plaintiff showed up about an hour late to work for his lunch shift. As a result, Defendant took disciplinary actions against him, a legitimate action. However, two (2) other Defendant's Employees (Whites, United States) had also showed up about an hour late, but no disciplinary actions were taken against them. (3)Defendant

assigned Plaintiff either unfavorable or no seating arrangement to favor other Employees who are doubled and triple-seated, thus making more money as reflected in Plaintiff's $19.00 earning for the evening of February 9, 2002, compared to his Co-Workers' (United States) earning of $100.00 or more; (4) Defendant routinely pulled Plaintiff out of banquet functions when scheduled to replace him with Other Employees (Whites, United States); (5) Defendant failed to promote Plaintiff to Banquet Captain (twice), promoting instead lesser-experienced Employees (White, United States); (6) The very first action taken by Defendant's newly hired General Manager upon taking office was to demote a Black Banquet Captain and replaced her with a White one; (7) Defendant selectively enforced company policies against Plaintiff.

Defendant did not afford Plaintiff same Equal Employment Opportunities as its other Employees (United States), especially when: (1) Defendant decreased or cut Plaintiff's hours but not its other Employees' hours of equal seniority ranks; Despite Plaintiff's seniority rank, number 3 on the seniority list. Defendant began cutting his work hours in November 2001, to favor other waiters of less seniority and with less experience. This violated Defendant's policy that "cuts, lay offs, scheduling, and Banquet promotion are all done based on seniority," as noted in Plaintiff's letter of grievances dated November 20, 2001.

## I. HOSTILE WORK ENVIRONMENT / RACIAL HARASSMENT

From June 15, 2001 through February 23, 2002, the date he was terminated, Defendant subjected Plaintiff to racial harassment, derogatory name callings, thereby subjecting him to a hostile environment. The harassment continued even though Plaintiff complained to Defendant on numerous occasions, as the record will show. Moreover, Defendant's

General Manager turned some of Plaintiff's Co-Workers against him, subjecting him to racial, ethnic, and other derogatory jokes. Plaintiff complained to Defendant about his behavior on numerous occasions but to no avail. These actions have disrupted Plaintiff employment.

Defendant's Employees harassed Plaintiff based on his race and/or ethnicity. First, Plaintiff is a member of a protected class, as he is Black, from Senegal, Africa, and 51 years old. Second, Plaintiff did not solicit nor did he invite such undesirable or offensive behaviors. Therefore, Defendant subjected Plaintiff to unwelcome harassment when: (1) one of Defendant's Waiters referred to Plaintiff's national origin, saying "I'll have to teach you how to use forks and knives too," on June 1 2001; (2) Defendant's bartender called Plaintiff a "cannibal on June 15, 2001, also calling Plaintiff a "man eater" and a "diseases carrier."; (3) on January 29, 2002, another one of defendant's Bartenders (American) based his refusal to serve Plaintiff a drink on Plaintiff's national origin, saying "You are from Africa, you have to wait;" (4) one of defendant's Bartenders remarked to Plaintiff "They don't like colored people. That's why customers are disappointed when they see a Black Waiter at their table;" (5) in referring to African taxicabs, one of defendant's waiters alluded to a "camel" and a "donkey" on February 1, 2001." Plaintiff deems the foregoing instances of harassment as based on membership in his protected class, specifically national origin (Senegal, Africa), but Plaintiff considers various instances when Defendant retaliated against him to be the most severe harassment, because these retaliations caused Plaintiff to be hospitalized for a chronic depression. These types of behavior took place because Defendant allowed them to happen. And despite the fact that Defendant's Harassment Policy dictates that Defendant

"shall investigate complaints of harassment," not a single investigation took place in response to any of Plaintiff's written or verbal complaints, dating back from June 15, 2001 to February 11, 2002.

### III. RETALIATION

Defendant discriminated and retaliated against Plaintiff when: (1) Defendant repeatedly responded to Plaintiff's letters of grievances with "counseling sessions," which the record shows are nothing short of retaliatory actions.

First, Plaintiff engaged in a protected activity on several occasions. Most notably, Plaintiff engaged in a protected activity when he apprised Defendant's Management of an incident that occurred (2) on June 15, 2001, via a letter dated the same day, regarding one of Defendant's Bartender's failure to serve him drinks for his customers; (3) On both June 29, 2001 and February 5, 2005, Plaintiff met with Defendant in what Defendant called "counseling sessions" to discuss gross disparities in the enforcement of Defendant's Policies, as well as a working environment that Plaintiff increasingly regarded as hostile; (4) Further, on October 31, 2001, Plaintiff complained to Defendant's Management Official regarding his schedule; (5) On February 9, 2002, Plaintiff submitted a note to Defendant to complain about Defendant's failure to seat his station the same as Defendant's other stations, submitting a letter regarding this grievance on the following day, February 10, 2002; (6) Plaintiff filed a complaint with the DC Office of Human Rights in February 2002.

Second, Defendant took adverse action against Plaintiff in the following instances. Defendant either assigned Plaintiff unfavorable seating or no seating at all. Defendant's Employees who are double and triple-seated make more money than Plaintiff, due to

more tips, as reflected in Plaintiff's $19.00 earning in tips for the evening of February 9, 2002, compared to his Co-Workers' (Whites, American), whom Defendant double and triple-seated, earnings of $100.00 or more for that evening. Moreover, in November 20, 2001 letter to Defendant, Plaintiff complained that Defendant cut or decreased his work hours. In all of the above instances, Plaintiff establishes that Defendant deprived Plaintiff of a privilege of employment, namely the opportunity to increase his salary via tips, work hours, and/or a promotion. Lastly, Defendant took adverse action against Plaintiff when it terminated his employment on February 23, 2002, thus not affording Plaintiff the benefits of future employment with respondent.

Third, Plaintiff establishes the inference of a causal connection between writing his letters of grievance and the adverse action(s) above.

## IV. AGE DISCRIMINATION

First, Plaintiff is a member of protected class, as he 51 years old. Second, the record shows that he is overly qualified for the position of Waiter. Specifically, Defendant cut Plaintiff's work hours to favor younger waiters; Defendant preferred younger waiters, giving them favorable seating arrangement as well as favorable station assignments, to the detriment of Plaintiff; (1) on February 9th, 2002, Plaintiff made $19.00, compared to younger workers, whom Defendant double and triple-seated, earning $130.00 to $180.00; (2) on February 19, 2002, Plaintiff made $83.00, compared to younger workers who made $160and plus; (3) on February 21, 2002, Plaintiff made $70.00, compared to younger workers who went home with $150.00 and plus; (4) on February 23, 2002, Plaintiff made $42.35, compared to younger workers who made $140.00 and more, three times as much; (5) Defendant bypassed Plaintiff twice and promoted instead two younger

waiters with less experience to banquet captains, thereby denying Plaintiff the opportunities to make $75,000 a year, as opposed to $30,000, which Plaintiff made as a simple waiter.

Second, since older staff cost more in salary and in subsidized insurance coverage, Defendant engaged in a systematic campaign to cut cost by firing or retiring the senior staff, or by pushing them out the door through harassment and intimidation in order to balance the books. For instance, the followings have been corroborated:

(1) Alice, 66 years old, served as hostess for 10 years with the company before being retired and replaced by a newly hired employee. (2) Thomas, 46 years old, a bus boy for more than 10 years, was pushed out and replaced by a newly hired employee. (3) Djiby Nam, 51 years old, a waiter for 5 years, was fired and replaced by a newly hired employee. (4) Lindly, 51 years old, the head waitress for 16 years, without a single write up on her file, yet in less than 3 months, after taking over, Defendant's newly hired General Manager collected the three necessary write-ups to justify her termination, which Defendant used to force her to agree not to testify on Plaintiff's behalf in his complaint with the DC Office of Human Rights (OHR).

## V. SELECTIVE ENFORCEMENT OF COMPANY POLICIES

Plaintiff was written up for a no show at time of schedule on June 19, 2001, and on February 23, 2002, and then fired based on these infractions. However, others Defendant's Employees, White Americans, did not receive the same disciplinary actions when they committed the same infraction. Specifically, (1) on June 19, 2001, Willy Copsey, White American, and Herman Blanco, also White American, failed to show up to work at time scheduled, being more than 45 minutes late, but Defendant did not write

them up; (2) on August 22, 2001, Herman Blanco, White American, again failed to report for the start of his scheduled shift, No call, No show, an hour and a half late, representing his second occurrence in two months, but Defendant did not write him up; (3) on December 12, 2001, James Corbin, White American, failed to report for the start of his scheduled shift, No call, No show, an hour late, but Defendant did not write him up; (4) on December 31, 2001, Collins, White American, failed to report for the start of his shift, No call, No show, did not show up or call at all, but Defendant did not fire him, due to a conflict of interest; (5) on April 22, 2002, Carlos Silva, White American, failed to report for the start of his shift, No call, No show, did not show up or call at all, thinking that he was off, but Defendant did not write him up; (6) in July of 2002, Bobby Allison, White American, failed to report for the start of his shift, No call, No show, did not show up or call at all, but Defendant rehired him after being fired by Catering Director, due to a conflict of interest; (7) on October 14, 2002, Nelson Arias, White American, failed to report for the start of his shift, No call, No show, did not show up or call at all, but Defendant did not writ him up, due a conflict of interest. These are examples of similarly situated employees, but treatment is massively different, due to Defendant selective enforcement of company policies.

Second, Plaintiff was fired for 3 absences in 5 years, one of which was doctor-sanctioned, due to injury on the job, but others Employees, White Americans, such as Charles, Willy, Herman, Lindly, just to name a few, had much more absences than Plaintiff, but were not fired for the same offenses.

**Wherefore, Plaintiff demands $300.000 in judgment against Defendant for compensatory damages as well as punitive damages in an amount awarded by a jury, back pays, malice, liquidated damage, job reinstatement, and promotion to banquet captain.**