**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DJIBY NAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-CV-00257 |
| | ) |
| THE OLIVER CARR COMPANY, | ) |
| | ) |
| Defendant. | ) |

**ANSWER TO AMENDED COMPLAINT**

Now comes the Oliver Carr Company, Inc. ("OCC") and for its Answer to the allegations in Plaintiff's Complaint ("Complaint"), OCC denies that it is a proper defendant to this action, denies all factual allegations not specifically admitted and, further answering, states as follows:

**JURISDICTION**

1. OCC admits that the Plaintiff alleges this action arises under the District of Columbia Code section referenced in Paragraph 1 of the Complaint, but, denies that Plaintiff has jurisdiction to bring such a claim and denies the existence of any facts that support such a claim.

2. OCC admits that the Plaintiff alleges this action arises under Title VII of the Civil Rights Act of 1962, the D.C. Human Rights Act, and the Age Discrimination Act; but OCC denies that the Plaintiff has jurisdiction for each of these claims and denies the existence of any facts that support such claims.

3. OCC states generally that it was not the Plaintiff's employer and thus denies all allegations that it was the Plaintiff's employer or that it acted or did not act in any way with respect to the Plaintiff as alleged in paragraph 3 of the Complaint. OCC

admits that the Plaintiff is Black and 51 years old.  OCC lacks knowledge or information sufficient to form a belief as to where the Plaintiff is from and therefore denies that he is from Senegal.  OCC admits that the Plaintiff worked as a waiter for 4 years.  OCC admits that the Plaintiff worked under four general managers during his employment and that one of those managers was Kathy Kain.  OCC denies that Kain's first job title was General Manager.  OCC is without knowledge or information sufficient to form a belief as to whether the Plaintiff worked under "over ten Assistant Managers" and for that reason denies this allegation.  OCC admits that the restaurant where the Plaintiff worked at one time had an employee of the month program, but is without knowledge or information sufficient to form a belief as to what prizes were available, how long the program was in place, or who made the decision to end the program and for that reason denies these specific allegations describing the employee of the month program.  OCC denies all of the remaining allegations in Paragraph 3 of the Complaint.

     I.     In response to the first paragraph numbered "I", OCC states generally that it was not the Plaintiff's employer and thus denies all allegations in this paragraph that it was the Plaintiff's employer or that it acted or did not act in any way with respect to the Plaintiff.  OCC admits that the Plaintiff is Black and 51 years old.  OCC lacks knowledge or information sufficient to form a belief as to where the Plaintiff is from and therefore denies that he is from Senegal.  OCC does not know what Plaintiff means by "overly qualified to be a waiter" and therefore denies this allegation.  OCC admits that Plaintiff's employer cut the hours of its employees following the September 11, 2001 terrorist attacks, but denies that this hours deduction favored "other employees (United States)."  OCC denies that the Plaintiff was "about" an hour late for work on June 19, 2001, but

admits that the Plaintiff was over an hour late for work on June 19, 2001 and that, as a result of this, that his employer took legitimate disciplinary action against him. OCC is without knowledge or information sufficient to form a belief as to the arrival times of Plaintiff's co-workers on that day and therefore denies the allegation that White, United States, co-workers arrived late but were not disciplined. OCC denies that Plaintiff's employer assigned him unfavorable or no seating arrangements to favor "White, United States" employees. OCC is without knowledge or information sufficient to form a belief as to the money earned by any waiter on February 9, 2002 and for that reason denies the allegations relating to compensation on that day. OCC admits that the Plaintiff never held the job of Banquet Captain, but denies that his employer "failed to promote" him. OCC denies that any actions the Plaintiff's employer took toward him violated the employer's policies. OCC denies the remaining allegations in the first paragraph I of the Complaint.

I.      In response to the second paragraph "I" in the Complaint, OCC states generally that it was not the Plaintiff's employer and thus denies all allegations in this paragraph that it was the Plaintiff's employer or that it acted or did not act in any way with respect to the Plaintiff. OCC admits that the Plaintiff was terminated from employment on February 23, 2002 by his employer. OCC denies that it or Plaintiff's employer subjected the Plaintiff to racial harassment, derogatory name callings or created a hostile environment. OCC admits that the Plaintiff complained to his employer, but denies that any of his complaints were meritorious or that his employer turned his co-workers against him or subjected him to racial, ethnic, or other derogatory jokes. On information and belief, OCC admits that a co-worker made a comment to the Plaintiff

regarding silverware after Plaintiff consumed food using his hands, but denies that the co-worker said "I'll have to teach you to use forks and knives too." OCC also denies that this comment was harassing or was based on the Plaintiff's national origin. OCC is without knowledge or information sufficient to form a belief as to whether the other comments that Plaintiff alleges were made by co-workers in the second Paragraph I occurred and for that reason denies that they occurred. OCC also is without knowledge or information sufficient to form a belief as to whether the Plaintiff solicited or invited such comments or whether the Plaintiff considers his retaliation claims to be the "most severe harassment." OCC admits that the Plaintiff was at one time hospitalized for health issues including depression, but denies that the hospitalization was "caused" by his employer. OCC denies that it or Plaintiff's employer "allowed" any of actions alleged in the second Paragraph I to happen. OCC admits that Plaintiff's employer had a Harassment Policy that included an obligation to investigate complaints of harassment. OCC denies that Plaintiff's complaints were not investigated. OCC denies that any of the Plaintiff's complaints were meritorious. OCC denies the remaining allegations in the second Paragraph I of the Complaint.

In response to Paragraph "III" of the Complaint, OCC states generally that it was not the Plaintiff's employer and thus denies all allegations in this paragraph that it was the Plaintiff's employer or that it acted or did not act in any way with respect to the Plaintiff. OCC admits that the Plaintiff was counseled on numerous occasions by his employer, but denies that any of these disciplinary steps was motivated by retaliation. OCC admits that the Plaintiff made complaints to his management. Plaintiff's allegation that these complaints constituted protected activity is a legal conclusion to which no response is

4

required. To the extent a response to this allegation is required, it is denied. OCC admits that the Plaintiff complained to his management on June 15, 2001 about the bartender's backlog of drink orders, complained on October 31, 2001 about his schedule, and complained on February 9, 2001, and February 10, 2001 about his seating assignments. OCC denies that any of these complaints were meritorious. OCC admits that the Plaintiff filed a complaint against his employer with the DC Office of Human Rights, but denies that this was known to Plaintiff's employer when he was terminated from employment. OCC admits that the Plaintiff's employer terminated him from employment on February 23, 2002. OCC denies that Plaintiff's employer assigned him unfavorable seatings or failed to seat him "to favor other Employees" and denies that Plaintiff's employer made any decisions regarding seating that were not business based, non-discriminatory, and non-retaliatory. OCC is without knowledge or information sufficient to form a belief as to the allegations relating to seating assignments or the amount of tips earned by any waiter on February 9, 2002 and for that reason denies the allegations relating to seating assignments and tips. OCC admits that on or about November 20, 2001 the Plaintiff complained to his management regarding scheduling, but denies that this complaint was meritorious. OCC denies that it or the Plaintiff's employer took any adverse action against the Plaintiff in retaliation for any of the Plaintiff's complaints. OCC denies all remaining allegations in Paragraph III of the Complaint.

     In response to the Paragraph number "IV" in the Complaint, OCC states generally that it was not the Plaintiff's employer and thus denies all allegations in this paragraph that it was the Plaintiff's employer or that it acted or did not act in any way with respect to the Plaintiff. OCC admits that the Plaintiff is a member of a protected class and is 51

5

years old.  OCC does not know what the Plaintiff means by "overly qualified for the position of Waiter" and for that reason denies this allegation.  OCC denies that Plaintiff's employer preferred younger waiters and gave them favorable seating or station assignments.  OCC is without knowledge or information sufficient to form a belief as to the seating assignments and earnings allegations contained in subparagraphs numbered (1)-(4) contained in Paragraph IV of the Complaint and for that reason denies the accuracy of any of the statements contained in subparagraphs (1)-(4).  With respect to subparagraph (5), OCC denies that the Plaintiff ever sought a promotion and for that reason denies that he was denied any promotion or "bypassed."  OCC admits that some banquet captains earn more than waiters, but denies the accuracy of the $75,000/$30,000 salary comparison  OCC denies that Plaintiff's employer had any "systematic campaign" to cut costs by firing or retiring the senior staff or by pushing them out the door through harassment and intimidation in order to balance the books.  OCC admits that Plaintiff's employer employed a hostess named Alice for at least 10 years, but denies that Alice did not voluntarily retire.  On information and belief, OCC admits that Plaintiff's employer replaced Alice with a newly hired employee.  OCC admits that Plaintiff's employer also employed a waiter named Lindly, but denies that Lindly had no write ups in her file and denies that Plaintiff's employer "collected" write ups to "justify" her termination.  OCC denies that it or Plaintiff's employer "forced her to agree not to testify on Plaintiff's complaint with the DC Office of Human Rights."  OCC is without knowledge or information sufficient to form a belief as to the identity of "Thomas," and for that reason denies all allegations relating to Thomas.  OCC denies that Plaintiff's employer terminated any employee for unlawful reasons, due to "harassment and intimidation," or

6

to prevent anyone from testifying on the Plaintiff's behalf. OCC denies the remaining allegations in Paragraph IV of the Complaint.

  In response to paragraph V of the Complaint, OCC states generally that it was not the Plaintiff's employer and thus denies all allegations in this paragraph that it was the Plaintiff's employer or that it acted or did not act in any way with respect to the Plaintiff. OCC admits that the Plaintiff was written up by his employer for not showing up for his scheduled shift on June 19, 2001 and February 23, 2002 and that these infractions were among the performance issues that caused his employer to terminate him from employment. OCC denies that any "White American" who worked with the Plaintiff was treated more favorably than the Plaintiff. OCC does not know what the Plaintiff means by "due to a conflict of interest" and thus denies all allegations that Plaintiff's employer was motivated by a conflict of interest. OCC is without knowledge or information sufficient to form a belief regarding the allegations contained in subparagraphs (1)-(7) regarding individual employee's arrival times on particular days and for that reason denies that these events occurred as alleged. OCC denies that all of the individuals listed in subparagraphs (1)-(7) are "White Americans." OCC denies that James Corbin or Bobby Allison never were disciplined for tardiness/absenteeism issues. OCC denies that Plaintiff was fired for "3 absences in 5 years," but admits that his employer terminated his employment because he repeatedly failed to appear for the start of his scheduled work shift. OCC denies that Plaintiff's employer engaged in selective enforcement of company policies and denies that Plaintiff's employer failed to apply these policies consistently to any employee named Charles, Willy, Herman, and Lindly. OCC is without knowledge or information sufficient to form a belief as to the number of absences any of the listed

7

employees had and for that reason denies that they had "much more absences than Plaintiff." OCC denies the remaining allegations in Paragraph V of the Complaint.

In response to the unnumbered prayer for relief, OCC denies that the Plaintiff is entitled to any damages or relief at all and moreover denies the existence of any facts that would support a conclusion of unlawful acts by the Defendant or by the Plaintiff's employer. To the extent that this paragraph contains any factual allegations, they are denied.

## AFFIRMATIVE AND OTHER DEFENSES

### First Defense

The Complaint should be dismissed because the Oliver Carr Company, the named Defendant, never employed the Plaintiff and is therefore not a proper defendant to this action.

### Second Defense

The Complaint should be dismissed because Plaintiff has failed to exhaust his administrative remedies with respect to the Oliver Carr Company, the named Defendant.

### Third Defense

The Complaint should be dismissed because it fails to state a claim upon which relief can be granted.

### Fourth Defense

The Plaintiff's DCHRA claim should be dismissed because the Plaintiff elected to take his complaint through the DC Human Rights Commission administrative process and completed that process, receiving a no cause finding.

<u>Fifth Defense</u>

Some or all of the Plaintiff's federal civil rights claims should be dismissed because they exceed the scope of his charge of discrimination with the Equal Employment Opportunity Commission.

<u>Sixth Defense</u>

Expressly denying any wrongdoing on its part, and expressly denying that the Plaintiff has been damaged as alleged, OCC states that the Plaintiff failed to mitigate or otherwise act to lessen or reduce the injuries and damages alleged in his claims.

<u>Seventh Defense</u>

Expressly denying any wrongdoing on its part, and expressly denying that the Plaintiff has been damaged as alleged, OCC states that the punitive damages sought by the Plaintiff in the Complaint are barred because none of the employment actions alleged in the Complaint were taken in a malicious, wanton, or reckless manner, or in willful disregard for another's rights.

<u>Eighth Defense</u>

Some or all of the Plaintiff's claims should be dismissed because the Plaintiff's employment was terminable at will.

<u>Ninth Defense</u>

Expressly denying any wrongdoing on its part, and expressly denying that the Plaintiff has been damaged as alleged, some or all of the Plaintiff's claims should be dismissed because the allegations involve acts/omissions of non-management personnel who were not agents of Plaintiff's employer.

### Tenth Defense

Some or all of the Plaintiff's claims are barred by the doctrines of waiver and estoppel.

### Eleventh Defense

Some or all of the Plaintiff's claims are barred by the doctrine of laches.

### Twelfth Defense

Expressly denying any wrongdoing on its part, and expressly denying that the Plaintiff has been damaged as alleged, OCC states that the Plaintiff's alleged damages are barred, in whole or in part, by the equitable doctrine of unclean hands.

### Thirteenth Defense

Expressly denying any wrongdoing on its part, and expressly denying that the Plaintiff has been damaged as alleged, OCC states that the Plaintiff's alleged damages are barred, in whole or in part, by his own misconduct.

### Fourteenth Defense

To the extent that the Plaintiff alleges any common law claims, these claims are barred by the applicable statute of limitations.

### Additional Defenses

OCC reserves the right to assert additional defenses as the Plaintiff's claims are more fully disclosed during the course of this litigation.

WHEREFORE, having fully answered, OCC respectfully requests that the Complaint be dismissed with prejudice, and that OCC be awarded its costs expended in defending this action, including reasonable attorneys' fees.

Respectfully submitted,

THE OLIVER CARR COMPANY, INC.,


By: /s/ *Scot A. Hinshaw*
        Counsel

Susan F. Wiltsie, Esq. (Bar No. 429625)
Scot A. Hinshaw, Esq. (Bar No. 449723)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 955-1500
(202) 778-2201 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April, 2007, the foregoing Answer to Amended Complaint was served by first-class, postage prepaid mail:

>Djiby Nam
>P.O. Box 75669
>Washington, DC 20013

>/s/ *Scot A. Hinshaw*