# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DJIBY NAM,

      Plaintiff,

      v.                      Civil Action No. 07-CV-00257 (RJL)

THE OLIVER CARR COMPANY,

      Defendant.

## PLAINTIFF'S ARGUMENTS IN OPPOSITION TO DEFENDANT THE OLIVER CARR COMPANY'S MOTION TO JOIN AND SUBSTITUTE PERSHING ASSOCIATES AS A DEFENDANT AND POINTS IN SUPPORT THEREOF

Defendant's Motion to Join and Substitute Pershing Associates as a Defendant is replete with inaccuracies and misleading information as to who operated Plaintiff's employer, the Occidental Restaurant, when Plaintiff was employed there. Because of this, Plaintiff is hereby submitting to the court evidence to prove that Plaintiff's employer, The Occidental Restaurant, was operated – during Plaintiff employment - by The Oliver Carr Company (OCC) Officers, namely Richard "Dick" Carr, OCC's President, Angie D. O'Grady, OCC's Vice President, also serving as Asset Manager for Plaintiff employer, The Occidental Restaurant, and Patsy J. Gross, OCC's Treasurer and Controller, also serving as Human Resource Director for Plaintiff's employer, the Occidental Restaurant. Plaintiff, during his four years of employment at the Occidental Restaurant, did not meet with any officer from Pershing Associates. All correspondences that Plaintiff received from his employer, The Occidental Restaurant, in response to his grievances, were done on The Oliver Carr Company stationary – not Pershing Associates. Further, Plaintiff's

**RECEIVED**

AUG - 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

grievances of discrimination, retaliation, and harassment were investigated - and responded to - by the above-mentioned Oliver Carr Company's Officers, not Pershing Associates. Therefore, The Oliver Carr Company and its officers, in their capacities as supervisors of Plaintiff employer, the Occidental Restaurant, were duty-bound to protect Plaintiff from harm in the work place. Not only did OCC fail to do so, but it also either condoned those retaliatory and discriminatory activities or, in some cases, was a willing participant in it , as the evidence below will show.

In further support of his argument, Plaintiff states as follows:

1.    Richard "Dick" Carr, The Oliver Carr Company's President, detained the sole power to hire and fire General Managers for Plaintiff's employer, The Occidental Restaurant – not Pershing Associates. As a matter of fact, Richard "Dick" Carr, The Oliver Carr Company's President, not Pershing Associates, hired and fired General Managers Keith Heymauer, Jim Banello, Sara Pratt, and Kathy Kain. Plaintiff would like to bring the Court's attention to Kathy Kain - under whose management, Plaintiff was repeatedly subjected to discriminatory and retaliatory acts. In each of these cases where a General Manager was fired or hired for Plaintiff employer, The Occidental Restaurant, Richard "Dick" Carr, The Oliver Carr Company's President, not Pershing Associates, would call a staff meeting and personally show up at Plaintiff's work place, The Occidental Restaurant, to inform staff of the change in leadership and introduce the newly hired General Manager. Therefore, there was no doubt among staff about who ran the Occidental Restaurant. Employment decisions, policy decisions, and business decisions were all made and implemented by The Oliver Carr Company and its above-mentioned officers – not Pershing Associates.

2.    Plaintiff's complaint of discrimination and harassment were investigated and responded to – not by Pershing Associates – but by Patsy J. Gross, The Oliver Carr Company (SEE Exhibit A), and by Angie D. O'Grady, The Oliver Carr Company (SEE Exhibit B), and on stationary bearing The Oliver Carr Company's Logo – not Pershing Associates'. In addition, Patsy J. Gross' and Angie D. O'Grady's responses to Plaintiff's complaints of discrimination and harassment were cc: to Richard "Dick" Carr, President, The Oliver Carr Company – not Pershing Associates' (SEE Exhibit B). Therefore, there is no doubt as to who operated The Occidental Restaurant. The evidence contained in the Exhibits show that The Oliver Carr Company ran it while Plaintiff was employed there.

3.    Pershing Associates exists only in name. Plaintiff has never met any of its officers. Throughout his four years of employment at The Occidental Restaurant, Plaintiff has only dealt with The Oliver Carr Company (OCC) and its Officers, namely Richard "Dick" Carr, OCC's President, Angie D. O'Grady, OCC's Vice President, also serving as Asset Manager for Plaintiff employer, The Occidental Restaurant, and Patsy J. Gross, OCC's Treasurer and Controller, also serving as Human Resource Director for Plaintiff's employer, the Occidental Restaurant. Further, The Oliver Carr Company, through its President, Richard "Dick" Carr, hired Kathy Kain, the General Manager who subjected Plaintiff to discriminatory and retaliatory actions. Therefore, The Oliver Carr Company is a practical matter to the litigation and is necessary to the action – as not to prejudice Plaintiff's ability to prove his case.

4.    The Oliver Carr Company is a proper party because OCC's officers – not Pershing's - investigated and responded to all of Plaintiff's grievances. Because OCC operated Plaintiff's employer, The Occidental Restaurant, it was duty-bound to protect

Plaintiff from discrimination and harassment in the work place. Not only did OCC fail to do so, but it also either condoned those retaliatory and discriminatory activities or, in some cases, was a willing participant in it – as the evidence below will show: In response to Plaintiff's letters of grievances of July 1 and July 9, 2001 (SEE Exhibit C), addressed to Patsy J. Gross, Treasurer and Controller of The Oliver Carr Company, also serving as Human Resources Director for Plaintiff's employer, The Occidental Restaurant, She responded by calling a general staff meeting on Saturday, August 25, 2001, during which, The Occidental Restaurant's staff was informed that General Manager Kathy Kain and Executive Chef Patrick Bazin had been promoted to Managing Partners by the Oliver Carr company. The Occidental Restaurant's staff was also informed that Kathy Kain and Patrick Bazin, in their new capacities as Managing Partners, would be in charge of all restaurant related problems, including employees' grievances. By this very action, The Oliver Carr Company gave Kathy Kain the green light to ignore Plaintiff's complaint of discrimination at best, and to retaliate at worse. As a result, the situation deteriorated. Plaintiff was instructed to direct his letters of grievances to Kathy Kain, the very subject of his complaints – which resulted in more retaliation, leading to three disciplinary actions against Plaintiff in less than eight months, and then to his termination. Let the Court note that Plaintiff had no disciplinary actions in four years of employment prior to Kathy Kain's arrival. At the very least, The Oliver Carr Company, by its own action, or lack thereof, allowed the discriminatory practices to continue, as well as the retaliatory acts that soon followed.

5.    When Plaintiff was committed to the Mental Unit at Georgetown University Medical Center, suffering from a chronic depression as a result of harassment

at work, Patsy J. Gross, Treasurer and Controller, The Oliver Carr Company, also serving

as Human Resource Director for Plaintiff's employer, The Occidental Restaurant,

requested and received from Plaintiff's Doctor information about his medical condition,

type of treatment received, the duration of hospitalization, the date of his release from the

hospital, and the date Plaintiff would be medically fit to return to work. Here, too, it was

The Oliver Carr Company – not Pershing – who dealt with Plaintiff's condition, trying to

protect The Occidental Restaurant's interest.

     6.     On Saturday, February 9, 2002, looking for ways to get some help to stop

these unbearable retaliatory and discriminatory practices at work, I followed the chain of

command and appealed to Richard "Dick" Carr, The Oliver Carr Company's President,

by way of an express mail letter, delivered on February 11, 2002. Responding for The

Oliver Carr Company, Angie D. O'Grady, OCC's Vice President, also serving as Asset

Manager, The Occidental Restaurant, Plaintiff's employer, responded in a letter dated

February 11, 2002, on stationary bearing The Oliver Carr Logo – not Pershing

Associates – whereby she declined to investigate "any further," indicating that Plaintiff

and "the other servers were treated fairly and equally…" (SEE Exhibit B). Plaintiff would

like to bring to the Court's attention the fact that in a situation as serious as an employee

complaining about discrimination, harassment, and retaliatory actions at work, it was The

Oliver Carr Company and its Officers who responded to Plaintiff's complaint, not

Pershing Associates. OCC, through its Officer Angie D. O'Grady, rejected Plaintiff's

complaint and declined to investigate "any further." Let the Court note that Exhibit B

bears the Logo of The Oliver Carr Company – not Pershing associates – and Angie D.

O'Grady, OCC's Vice President, signed as Asset Manager, Occidental Restaurant,

Plaintiff's employer. This is another evidence that The Oliver Carr Company and its officers dealt with Plaintiff's complaint of discrimination and harassment – not Pershing Associates.

    7.    On Tuesday, February 12, 2002, Angie D. O'Grady, The Oliver Carr Company Vice President, also serving as Asset Manager for The Occidental Restaurant, Plaintiff employer, called a meeting attended by General Manager Kathy Kain and Plaintiff Djiby Nam, during which Plaintiff was presented with a threat of termination, in a form of a confidential letter signed by Kathy Kain (SEE Exhibit D). By being at this meeting, where Plaintiff was given a threat of termination, Angie D. O'Grady, OCC's Vice President, also serving as Asset Manager for Occidental Restaurant, Plaintiff's employer, agreed to – or condoned – the action taken against Plaintiff and thus was a willing participant in retaliatory and discriminatory actions against Plaintiff, leading to his termination on February 23, 2002. Let the Court note that Plaintiff's pleas to be protected against further harm, as illustrated on Exhibit D, were ignored by OCC (SEE Exhibit D). Moreover, Plaintiff's appeal to Richard "Dick" Carr, OCC's President, in a form of a letter, dated February 24, 2002, in a desperate attempt to save his job, went unanswered (SEE Exhibit E). Therefore, The Oliver Carr Company's notion that "The Plaintiff does not claim that any employee of OCC took any discriminatory action against him" is not born out by facts. Further, OCC knowingly gave the Court inaccurate information when it stated that "OCC neither operates The Occidental Restaurant..." (See The Oliver Carr Company's Motion to Join and Substitute Pershing Associates as a Defendant and Points and Authorities in Support thereof).

8.      On March 18, 2002, The DC Office of Human Rights scheduled a Mediation meeting, and representing the Oliver Carr Company to that meeting - not Pershing Associates - was Angie D. O' Grady, OCC's Vice President, also serving as Asset Manager for The Occidental Restaurant, Plaintiff's employer, along with General Manager Kathy Kain, and OCC's Lawyer (SEE Exhibit F). Pershing Associates was not present – nor has it been present to any of the legal proceeding during the last five years that the case ran its course through the DC Office of Human Rights and EEOC. The Oliver Carr Company and its officers have defended the interests of The Occidental Restaurant, Plaintiff's employer, throughout, not Pershing associates.

9.      Plaintiff does not have any information about Pershing Associates, nor does he knows any of its Officers. Throughout its employment at The Occidental Restaurant, Plaintiff has only known and dealt with The Oliver Carr Company and its Officers. It was The Oliver Carr Company, through Richard "Dick" Carr, its President, not Pershing Associates, who hired General Manager Kathy Kain who subjugated Plaintiff to numerous discriminatory and retaliatory actions against him. It was The Oliver Carr Company – not Pershing Associates - through Patsy J. Gross, OCC's Treasurer and Controller, also serving as Human Resource Director for Plaintiff's employer, the Occidental Restaurant, who promoted Kathy Kain to Managing Partner and put her in charge of all restaurant related problems, including employees' grievances. By this very action, The Oliver Carr Company gave Kathy Kain the green light to ignore Plaintiff's complaint of discrimination at best, and to retaliate at worse. It was The Oliver Carr Company – not Pershing Associates - who investigated and responded to Plaintiff's complaints of discrimination, retaliation and harassment (SEE Exhibit A and Exhibit B).

It was The Oliver Carr Company – not Pershing Associates – through Angie D. O'Grady,

OCC's Vice President, also serving as Asset Manager for Occidental Restaurant, who

declined to investigate Plaintiff's complaint of discriminatory practice and then presented

him with a threat of termination (SEE Exhibit D). Finally, it was also The Oliver Carr

Company, not Pershing Associates, through Angie D. O'Grady, OCC's Vice President,

also serving as Asset Manager for Occidental Restaurant, who represented The

Occidental Restaurant, Plaintiff's employer, at The Mediation Meeting called for by The

DC Office of Human Rights (See Exhibit F).  Pershing Associates was not present – nor

has it been present to any of the legal proceeding during the last five years that the case

ran its course through the DC Office of Human Rights and EEOC. The Oliver Carr

Company and its officers have defended the interests of The Occidental Restaurant,

Plaintiff's employer, throughout, not Pershing Associates. Therefore, Plaintiff is strongly

opposed to Pershing being substituted as defendant in this case, because such an action

will cause prejudice or delay in the Plaintiff's action. All of the evidences provided to the

Court bear the name of The Oliver Carr Company and its Officers – Not Pershing

Associates. Plaintiff cannot make a case against Pershing Associates because he has

never met any of its officers and did not receive any correspondence from them. All the

correspondences Plaintiff received, related to his grievances, were sent to him by The

Oliver Carr Company and its Officers, on stationary bearing The Oliver Carr Company

Logo – not Pershing Associates.

      10.    The Oliver Carr Company submitted an Affidavit signed by Patsy J. Gross,

claiming that "no one at The Occidental Restaurant is an Officer, manager, general agent,

or an authorized individual of any sort to accept services of a lawsuit on behalf of OCC."

Her assertion is disputed by facts. Patsy J. Gross, Treasurer and Controller of The Oliver Carr Company, also served as Human Resource Director for The Occidental Restaurant, Plaintiff's employer (SEE Exhibit A). In addition, Angie D. O'Grady, Vice President of The Oliver Carr Company, also served as Asset Manager for The Occident Restaurant, Plaintiff's employer (SEE Exhibit B). Therefore, Patsy J. Gross may have knowingly committed perjury, by signing a false affidavit, because both Patsy Gross and Angie O'Grady are OCC's Officers – as indicated above – who also worked for the Occidental Restaurant, Plaintiff's employer, as Human Resource Director and Asset Manager, respectively. Therefore, in their capacities as OCC's Officers, also working for The Occidental Restaurant, they were "an Officer, manager, general agent, or an authorized individual of any sort to accept services of a lawsuit on behalf of OCC."

11.     Patsy Gross also indicated in her Affidavit that "OCC's Corporate offices are located at 1701 Pennsylvania Avenue, NW, Suite 300, Washington, DC 2006. What she failed to mention in her Affidavit, however, is the fact that for the duration of Plaintiff's employment at The Occidental Restaurant, The following Oliver Carr Company's Officers, Richard "Dick" Carr, OCC's President, Patsy J. Gross, OCC's Treasurer and Controller, and Angie D. O'Grady, OCC's Vice President, held offices at 655 15th Street, Suite 410, Washington, DC 2005, in an adjacent building just behind The Occidental Restaurant, where they ran the day to day operations of Plaintiff's employer, The Occidental Restaurant (SEE OCC's addresses listed in Exhibit A and Exhibit B). And on any given business day, either Richard "Dick" Carr, Patsy Gross or Angie O'Grady would come in to attend to The Occidental Restaurant's business – and at time, all three of them would come in to confer with the wait staff, management, or the chef.

Therefore, the claims made in the Affidavit signed by Patsy Gross are not born out by facts.

12.    Based on the evidence submitted to this Court by Plaintiff, showing that The Oliver Carr Company and its Officers – not Pershing Associates – operated the Occidental Restaurant, Plaintiff's employer, and took all the relevant actions that allowed and lead to Plaintiff's mistreatment and termination, The Court should find that The Oliver Carr Company was indeed the Plaintiff's employer and is, therefore, the proper defendant in this case.

13.    Plaintiff Djiby Nam strongly opposed substituting Pershing for The Oliver Carr Company. Pershing can be joined to the action. However, Plaintiff Djiby Nam strongly objects to dismissing The Oliver Carr Company from this case. There is no evidence tying Pershing to Plaintiff's employer's actions against him. All the evidences implicate The Oliver Carr Company and its Officers.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully request that this Court join Pershing as a defendant – in addition to The Oliver Carr Company. Further, Plaintiff respectfully requests that this Court leave The Oliver Carr Company as the proper defendant in this action.


Respectfully Submitted,


Djiby Nam, Plaintiff PRO SE

Djiby Nam

P. O. Box 75669
Washington, DC 20013
(202) 841-3792

# CERTIFICATE OF SERVICE

    I hereby certify that on this 3rd day of August, 2007, the foregoing The Plaintiff's Arguments in Opposition to Defendant The Oliver Carr Company's Motion to join and Substitute Pershing Associates as a Defendant and Points in Support Thereof and draft Order were served by certified mail, returned receipt requested, to:

                    Scot A. Hinshaw
                    HUNTON & WILLIAMS LLP
                    1900 K Street, N.W.
                    Washington, DC 20006

Djiby Nam, Plaintiff PRO SE

Djiby Nam
P. O. Box 75669
Washington, DC 20013
(202) 841-3792

# Exhibit A



# CARR
## OLIVER CARR COMPANY

SENDER'S DIRECT DIAL NUMBER:  202-879-5519

July 11, 2001

Djiby Nam
35 E Street, NW
Apartment 714
Washington, DC 20001

Dear Djiby,

 Thank you for your July 9 correspondence.  I am sorry to hear about your medical difficulties.  I will include your allegations of unfair treatment on July 4 in my investigation of the claims raised in your earlier correspondence.  Of course, I need to speak to you about these issues as part of my investigation.  Please let me know when you are medically able to have such a meeting and we will schedule it at the next mutually convenient time.

Sincerely,

*Pat*

Patsy J. Gross
The Oliver Carr Company
Managing General Partner,
Pershing Associates

# Exhibit B

# CARR
## OLIVER CARR COMPANY

202.654.7103
SENDER'S DIRECT DIAL NUMBER: _____

February 11, 2002

*To be added to complaint of 2/19/02 with Human Rights, office of*

Mr. Djiby Nam, AKA DJ
35 E Street, NW
Apt. 714
Washington, DC  20001

Dear DJ:

I am in receipt of your complaint dated February 10, 2002.  I have reviewed the seating records for the night in question, Saturday, February 9, 2002.  On Saturday evening when you expressed concern to management about the seating practices, management researched the number of covers that were seated at each station. The following numbers were recorded at 7:39pm on 2/09/02 and they indicate that all servers were treated equally in respect to seating assignments:

*Why research the Number of cover at 7:39 pm? the incident occured at around 8:10 pm when the restaurant was Full at least as my American colleagues*

- Alex – 17 covers
- Brie – 11 covers
- Carlos – 11 covers
- DJ – 13 covers
- Russell – 17 covers
- Cara – 17 covers

**Angela O'Grady**
Vice President, Tenant Services & COO

655 15th Street, NW
Suite 410
Washington, DC 20005

**PREFERRED OFFICES**

Phone: (202) 654.7103
Fax: (202) 638.6195
E-mail: aogrady@preferredoffices.com
www.preferredoffices.com

*For as far as my servations were concerned - that's when I Handed over the hand written note to KATHY Morgan!*

As you know, there are many factors that influence the seating assignment of patrons which makes it impossible for all stations to be seated with the exact number of patrons. Some of these factors may include:  size of the party, preference of party as to the type of seating (booth vs. table) and time of arrival by various parties.

Based on the information above, I will not be conducting any further investigations. We conclude that you, and the other servers were treated fairly and equally in respect to seating assignments last Saturday.

*So what is the cover Number of at 8:10 pm, for the above writen?*

Sincerely,

*To be seated (a note pleading to be seated)*

*The acurate covers count at the time seated I Handed KATHY Morgan At 8:05 pm) you need to ask for a research of covers recorded at 8:15 pm, on 2/09/02.*

*if you really want to Know*

**Angie O'Grady**

Angie D. O'Grady
Asset Manager, Occidental Restaurant

cc: Dick Carr, President, The Oliver Carr Company

# Exhibit C

'uly 9, 2001

TO: Patsy J. Gross
     The Oliver Carr Company
     Pershing Associates
     655 15th Street, N.W., Suite 410
     Washington, DC 20005

FROM: DJ, server
          at the Occidental

Dear Pat,

This is to confirm to you that I am being retaliated against, for filing an internal complaint of discrimination.

DATE OF LAST INCIDENT: Wednesday july 4th. Just three days after I shook hands with Kathy Kain, and asked her that we work together for the good of the restaurant, she wrote me up again. And incredibly, she wrote me up for something I had nothing to do with.

WRITE UP: On wednesday july 4th, I waited on a lady and her daughter at table 162. And on her way out, the lady complained to management about being pressured by a server into leaving a tip. Automaticly, Kathy Kain assumed that it was me she was complaining about. Therefore, I was called into the office, and written up. This is my second write up, which put me one writte up away from suspension and/or termination. Clearly, she is determined to get me out of here, and she is moving quickly, and swiftly. But there is only one problem. It was not me that the guest was complaining about, but Ron Bozeman, another server. My question is, if the guest complaint was serious enough to warrant writting me up, now that Ron Bozeman is known to be the subject of that guest's complaint, did Kathy Kain wrote him up? If not, then this will proove one more time too many that Kathy Kain will writte me up for anything, but will turn the other way when Ron, Bobby, Bob, Jason, Loren, etc... are involved.

PUTTING ME IN HARM WAY: When I came out of the office that day, I felt pretty beaten up, depressed, and suffering from severe headache. So I asked Rob, an assistant manager, for authorisation to go home, for not feeling good. Rob went into the office to inform Kathy Kain. However, Christian, another assistant manager, came out of the office, and told me " you can't go home ". And he went on to say " Kathy Kain said that if you leave, you can't come back ". So regardless of my health condition, I was forced to work a double shift, 13 hours straight, without a break. There was a lot of frustration, stress, and anger growing inside of me, but I suppressed my emotions, and

completed my shift without a problem.

By the time I finaly got home at midnight, I suffered a serious nervous breakdown. I went to the emergency room at Georgetown University Medical Center, and was immediately admited and hospitalized for 5 days. And the problem? A major deppression. I was released from the hospital today, but I am continuing treatment in an outpatient program, at the end of which, the doctor will let me go back to work.

If you need to talk to servers, I suggest that you do so quickly, because some of the servers are leaving. I think Bob left already. Ron is leaving tomorrow or by thursday. And Jason is leaving this month I beleive.

I thank you in advance for your time.

Devoted to serve you more and better

Djiby Nam, a.k.a. DJ
35 E street, N.W., # 714
Washington, DC 20001
(202) 393 - 0798

CONFIDENTIAL

MONDAY JULY 1st, 20001

TO: PAT GROSS

FROM: DJ, SERVER
          AT THE OCCIDENTAL

RE: THIS IS VERY CONFIDENTIAL

Dear Pat,

As encouraged by management, I tried to relay to Kathy Kain  some of my concerns
(████████████████████████████████████████), but it backfired. And as a result, the
work environment became pretty tense, if not hostile. Therefore, in the best interest of
our restaurant, I walked into Kathy Kain office on saturday, june 30, 2001, shooked her
hand, and asked her that we work together, for the good of our restaurant.

My coming to you is purely therapatic. I need to get this out of my chest, so I can move
on. I feel that I had valid grievances, and I needed a platform to voice those
grievances. A platform free of retaliation, intimidation, and threat of termination.

CASE IN POINT: on tuesday june 19, 2001, I was written up for coming to work an
hour late. And rightly so, because tardiness must not be tolerated.

But my question is, WHY JUST ME? Since the day I was disciplined for coming to
work late, Ron, Jason, Bob, Bobby, and Loren have been repeatedly coming to work
late, 20mn to an hour late - some of them daily - but none of them has been written up.

What make it more frustrated for me, is Kathy Kain response to this discrepancy: "It is
up to the discretion of the management  staff to decide who to writte up, and who not to
writte up".

At best, this process is selective. And at worse,..it is a case of preferential treatment.
You can't writte me up for being late, and turn the other way when my brother Ron,
Jason, Bob, Bobby, and Loren commit the same violation. I really feel that company
policies should not be enforced selectively. These policies should be enforced
equally. fairly. and accross the board.

Kathy Kain also responded by saying that James was also written up for being late. But

again, why writte up James and DJ only for being late, and not Ron, Jason, Bob, Bobby, and Loren who has repeatedly commited the same violation. THESE ARE THE WORSE OFFENDERS.

Moreover, James is a new server. He has not even completed his 90 days probationary period, and already he is coming to work repeatedly late. Me on the contrary, I have been here 3 years. This was my very first lateness, and my first writte up, in my 3 years working for the restaurant. So you can't compare my three years work record with James record, who has been here only a month or 2.

Kathy Kain also defended her action for not writting up Herman and Willy, who were also more than half an hour late, the very same day I was written up for coming to work an hour late. She said that she did not writte them up because they called. But company policies dictate that we call the office 2 hours before our scheduled time, in order to give management ample time to cover our shift, or to cover our opening side work. Neither Herman, nor Willy followed the abovbe mentioned procedures in calling late. Therefore, they are still considered late, per company policy, and should have been written up for being more than half an hour late, just like I was. *KATHY KAIN response U I have changed new guidelines everyday calling in late or out." So she has a company policy, and we have not been notified of those changes. Moreover, those guidelines are being inforced and we don't even know what they are.*

*changed*

Once again, I needed to get this out of my chest, so I can move on. I feel that I was not listened to. Rather, I was being subjected to actions which I consider to be retaliatory. Please do not tell Kathy Kain that I wrote you a letter. I could not survive another threat of termination. I love working here. I love our customers, and they love me. Therefore, his is where I belong.

Kathy Kain and I, have already agreed to put this incident behind us, and work together For the good of the restaurant.

I am closing by saying that I fully support Kathy Kain as the general manager of our Restaurant. We might have some disagreement about how company policies should be enforced, but we both have the same goal. And that is to take this restaurant to a high level.

CONFIDENTIALLY YOURS

Djiby Nam, aka DJ

# Exhibit D



**To:**   DJ Nam

**From:** Kathy Kain

**Date:** 2/12/02

**Re:**   Final Written Warning

On Saturday, February 9th, you expressed displeasure to the management staff that your section had not been seated as much as other stations. You presented a note to Kathy Morgan that was addressed to Kathy Kain requesting that your station be seated. In response to your concerns, management reviewed the seating records at 7:39pm, and found the following to be the actual number of patrons served thus far for the evening:

*This Time is WRONG. I was SENT Home immediately after turning in the letter & pleading to be seated. AND THIS was at 8:17 Pm.*

- ❑   Alex – 17 covers
- ❑   Brie – 11 covers
- ❑   Carlos – 11 covers
- ❑   DJ – 13 covers
- ❑   Russell – 17 covers
- ❑   Charles – 17 covers

When we reported to you that the stations were being seated fairly you continued to be disruptive in the restaurant. Your disruptions forced Kathy Kain to ask you to leave for the evening. At that point you continued to speak with other employees about the situation further disrupting service in the restaurant. *which employees*

The Occidental Management has a policy of seating all stations as equally as possible. It is important that you respect management and the decisions that are made without creating a scene with other employees. *which employees*

This is your final warning. If there are any other displays of insubordination or disruption to the service in the restaurant, we will have no other recourse but to terminate our relationship.

*I AM HEREBY REQUESTING AN INVESTIGATION. And I am Hereby Requesting protection against further HARASSMENT, Retaliation, and differential TREATMENT.*

CONFIDENTIAL

1

# Exhibit E

Sunday February 24, 20002

TO: Mr. Dick Carr, President
     THE OLIVER CARR COMPANY
     655  15TH Street, N.W., Suite 410
     Washington, DC 20005
     (202) 638 – 6178

FROM: Djiby Nam, AKA DJ
      35 E Street, N.W., Apt # 714
      Washington, DC 20001
      (202) 393 – 0798

RE: TERMINATION APPEAL

Dear Mr. Carr,

On Saturday February 23, 2002, I was terminated in the middle of my dinner shift, without any provocation whatsoever, by Kathy Kain, the General Manager. The reason given for this termination is: "Tardiness, Absenteeism, Failure to report to work".

There are many things that I can be written up for. Tardiness and or Absenteeism however, just does not happen to be one of them. I have by far the best attendance record in this work place. I don't come on time, I always report to work an hour early to set the restaurant up for success. And this is known to every one who works in here. Waiters and management alike.

In my 4 years working at the Occidental Grill, I have been late only once, without a valid justification. And this occurred on June 19, 2001. And it is important to note that on this particular day, 3 waiters were all more than 45 minutes late; Willy, Herman, and myself. However, I was the only waiter selectively sent home by Kathy Kain. And I was also the only waiter selectively written up by Kathy kain. I regard this action to be retaliatory in nature, because it happened 4 days after I sent a letter to Kathy kain complaining about being subjected to racial harassment at work.

This is the only time I have missed work without a valid and verified justification.

As for the incident related to Saturday February 23, 2002, Lindly, Charles, and myself, are the top 3 senior waiters. We have a set schedule, and we do not work lunch on weekends. We also have a set of days off. My days off are Saturday morning, Sunday, and Monday. These courtesies were extended to us for being with the company for the longest time than the rest of the staff who is fairly new. However, my schedule was changed without prior notice. I was scheduled to work on my day off, without my prior knowledge and or consent. (Please see attachment # 1).

Therefore, on Saturday February 23, 2002, I came back home at 11:10AM to find a message from Jerry, the opening manager, telling me to report to work. I told Jerry that I was off. He told me that I was scheduled to work lunch. Even though I had plans for Saturday morning, out of subordination, I then put my work uniform on, hailed a cab, and clocked in at work at 11:35AM. I worked lunch without a problem. I then took my break. I reported back to work at 5:00PM for my dinner shift, and waited on a party of 12 people without any problem whatsoever.

At around 7:50PM, Kathy Kain observed me documenting the number of covers that were seated at each station. Keeping a count on the number of covers is my way of forcing them to seat me. Kathy kain gives preference to American waiters when it comes to seating. This has been a recurring problem for me. She asked me what I was doing, and I told her that I was keeping a count on covers. So she got angry and summoned me in the office. And as soon as I stepped into the office, I was fired. She went on to say: "I want you to clean up your locker, and leave the premises." At this point, I requested that the termination be put in writing. I was then escorted out of the building. I later return to request a copy of my write up, and a copy of my Employee Financial report.

DIFFERENTIAL TREATMENT:
1. Lindly, our headwaiter, also keeps a count on covers. But she is not fired.
2. My American colleagues have a much worse record of tardiness and or absenteeism than I do. But they are not fired. And I'll let their time sheets speak for themselves.
3. Even Brie, the worse tardiness offender, is not fired. And her time sheet will show that she is not late once, twice or three times, she is ALWAYS late.

With this termination, a pattern has been established that Kathy kain has a set of rules for American waiters, and a completely different set of rules for me, the African waiter. I am therefore asking you, as the President of this company, to reverse my termination.

Thank you in advance for your time.


Djiby Nam, AKA DJ

# Exhibit F

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### Office of Human Rights

**Charles F. Holman, III**
**Director**



FEB 2 0 2002

Djiby Nam
35 E Street, NW, Apt #714
Washington, D.C. 20001

Re:    Docket No.: 02-127-P(CN)
       Djiby Nam v. The Oliver Carr Company

Dear Mr. Nam:

Enclosed is a copy of your formal complaint of discrimination prepared by this office in the above-referenced matter.

The Human Rights Amendment Act of 1997, established a mandatory mediation process. You are under no obligation to resolve this matter during mediation, but we must attempt to do so prior to forwarding this case for investigation. A Mediation Fact Sheet is enclosed for more detailed information about the mediation process.

Mediation is scheduled for MAR 1 8 2002 6:00 p.m. at the address below (Suite 570 North).

Please contact Georgia Stewart at (202) 727-4559 to confirm the mediation date stated above.

If this is an employment discrimination complaint, be advised that you have the responsibility to seek employment if you are unemployed. All records of employment search must be kept as well as evidence of earnings to be presented in the event you prevail during the investigation.

Sincerely,

Charles F. Holman, III
Director

Enclosure

441 4th Street, N.W., Suite 970N, Washington, D.C. 20001 • (202) 727-3900 • Fax: (202) 724-3786