# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DJIBY NAM,

      Plaintiff,

v.                                                              Civil Action No. 07-CV-00257 (RJL)

THE OLIVER CARR COMPANY,

      Defendant.

## THE PLAINTIFF'S REPLY TO THE OLIVER CARR COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO SUBSTITUTE PERSHING ASSOCIATES AS REAL PARTY IN INTEREST

The issue before this court is not just who owned the Occidental Restaurant but also who operated it while Plaintiff was employed there. The following facts will help the court determine who really operated the Occidental Restaurant where Plaintiff worked.

**FACT:** Defendant did not deny in its response that Richard "Dick" Carr, President of the Oliver Carr Company – not Pershing Associates - hired all four General Managers that ran the Occidental Restaurant when Plaintiff was employed there.

**FACT:** Defendant did not deny in its response that Patsy Gross, Controller and Treasurer of the Oliver Carr Company – not Pershing Associates – investigated Plaintiff's complaint of discrimination and harassment in the workplace, as evidence in Exhibit A, hereby attached.

**FACT:** Defendant did not deny in its response that Angela O'Grady, Vice President of the Oliver Carr Company – not Pershing Associates – provided a response to Plaintiff's complaint of discrimination and declined to investigate "any further,"

RECEIVED

AUG 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

concluding that Plaintiff and "the other servers were treated fairly and equally," as evidenced in Exhibit B, hereby attached.

**FACT:** Defendant did not deny in its response that Angela O'Grady, Vice President of The Oliver Carr Company – not Pershing Associates – called a meeting on Tuesday, February12, 2002, attended by General Manager Kathy Kain, during which Plaintiff was given a threat of termination signed by Kathy Kain, as evidence in Exhibit D, hereby attached.

**FACT:** Defendant did not deny in its response that the following Oliver Carr Company's officers, Richard "Dick" Carr, OCC's President, Patsy J. Gross, OCC's Treasurer and Controller, and Angie D. O'Grady, OCC's Vice President, held offices at 655 15th Street, Suite 410, Washington, DC 2005, in an adjacent building just behind The Occidental Restaurant, where they ran the day to day operations of Plaintiff's employer, The Occidental Restaurant, as evidenced by addresses listed on Exhibit A and Exhibit B, hereby attached.

These are the facts as they occurred, and they show the Oliver Carr Company and its officers – not Pershing Associates - making business and policy decisions for The Occidental Restaurant, Plaintiff's employer. The facts are clear. The Oliver Carr Company operated the Occidental Restaurant where Plaintiff worked – not Pershing Associates.

Interestingly enough, Defendant did not deny in its response any of the above-mentioned facts but rather pointed to the mere mention of Pershing Associates in correspondences between Plaintiff and The Oliver Carr Company, related to Plaintiff's

complaints of discrimination. For example, as illustrated in Exhibit A, hereby attached, Patsy Gross signed off on her correspondence to Plaintiff in the following:

> Patsy J. Gross
> The Oliver Carr Company
> Managing General Partner,
> Pershing Associates

Similarly, Plaintiff sent his letters of grievances, addressed in the same manner, as illustrated in Exhibit C, hereby attached, to:

> Patsy J. Gross
> The Oliver Carr Company
> Managing General Partner,
> Pershing Associates

Defendant seems to argue in his response that the mere notation of Pershing Associates along with the Oliver Carr Company on these correspondences, as illustrated above, demonstrate that Pershing "is clearly indicated as a party involved in the administrative stage of this matter" - an argument that is not much compelling and seems to be a little far-fetched. Still left unclear, however, is whether Patsy Gross, Angela O'Grady and other OCC's officers, in investigating and responding to Plaintiff's complaint of discrimination and harassment at work, they were acting in their capacities as officers of the Oliver Carr Company or officers of Pershing Associates - or both. Nevertheless, one thing remains perfectly quite evident: all correspondences from Plaintiff's employer dealing with Plaintiff's complaint of discrimination were made on The Oliver Carr Company's stationary – not Pershing Associates – and bearing the Oliver Carr Company's Logo – not Pershing Associates. What these evidences also show is the multiple roles that Richard "Dick" Carr, Patsy Gross and Angela O'Grady assume as officers of The Oliver Carr Company, on the one hand, as well as operators of the

Occidental Restaurant, on the other. Plaintiff is aware of the name, Pershing Associates, but he does not know who Pershing Associates is and cannot identify any of its officers, which begs the question: Did the Oliver Carr Company's officers also served as officers of Pershing Associates, as well? Defendant can elucidate the court on that point. These same three names, Richard "Dick" Carr, Patsy Gross, and Angela O'Grady, have surfaced and resurfaced at every turn where matters related to the operation of The Occidental Restaurant were concerned - be it business decisions or policy decisions. And even though Defendant has stated that it had provided information concerning "the corporate relationship of Pershing and the Occidental Restaurant," Plaintiff has not received a single document to support such a claim. To this day, Defendant has yet to identify any of Pershing Associates' Officers who supposedly operated the Occidental Restaurant. This is Defendant's opportunity to do so. Whether The Oliver Carr Company's officers also served as officers of Pershing Associates is yet to be determined. Defendant needs to clarify this issue to the Court so it can render its decision. In the meantime, the facts clearly indicates that the Oliver Carr Company and its officers – not Pershing Associates – got involved in all administrative matters pertaining to Plaintiff's predicament, from the hiring of General Manager Kathy Kain, under whose management Plaintiff was subjected to harassment and discriminatory practices, to the investigation of Plaintiff's subsequent complaint. Moreover, The Oliver Carr Company and its officers also provided the employer's response to Plaintiff's complaint of discrimination – which led to Plaintiff's further harassment and ultimate termination. Thus, The Oliver Carr Company and its officers operated The Occidental Restaurant, Plaintiff's employer, and therefore should remain as the Defendant in this case.

**WHEREFORE,** Plaintiff respectfully requests that this Court joint Pershing Associates as a defendant – in addition to the Oliver Carr Company. Further, Plaintiff respectfully requests that this Court leave The Oliver Carr Company as the proper defendant in this action.

Respectfully Submitted,

_____
Djiby Nam, Plaintiff PRO SE

Djiby Nam
P.O. Box 75669
Washington, DC 20013
(202) 841-3792

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2007, the foregoing The Plaintiff's Reply to The Oliver Carr Company's Reply in Support of its Motion to Substitute Pershing Associates as Real Party in Interest was served by certified mail, returned receipt requested, to:

                              Scot A. Hinshaw
                              HUNTON & WILLIAMS LLP
                              1900 K Street, N.W.
                              Washington, DC 20006

_____
Djiby Nam, Plaintiff PRO SE

Djiby Nam
P. O. Box 75669
Washington, DC 20013
(202) 841-3792

# Exhibit A



# CARR
## OLIVER CARR COMPANY

SENDER'S DIRECT DIAL NUMBER: 202-879-5519

July 11, 2001

Djiby Nam
35 E Street, NW
Apartment 714
Washington, DC 20001

Dear Djiby,

Thank you for your July 9 correspondence. I am sorry to hear about your medical difficulties. I will include your allegations of unfair treatment on July 4 in my investigation of the claims raised in your earlier correspondence. Of course, I need to speak to you about these issues as part of my investigation. Please let me know when you are medically able to have such a meeting and we will schedule it at the next mutually convenient time.

Sincerely,

Pat

Patsy J. Gross
The Oliver Carr Company
Managing General Partner,
Pershing Associates

# Exhibit B

# CARR
## OLIVER CARR COMPANY

February 11, 2002

Sender's Direct Dial Number: 202.654.7103

*[Handwritten: To be added to complaint of 2/19/02 with Human Rights office]*

Mr. Djiby Nam, AKA DJ
35 E Street, NW
Apt. 714
Washington, DC 20001

Dear DJ:

I am in receipt of your complaint dated February 10, 2002. I have reviewed the seating records for the night in question, Saturday, February 9, 2002. On Saturday evening when you expressed concern to management about the seating practices, management researched the number of covers that were seated at each station. The following numbers were recorded at *(7:39pm)* on 2/09/02 and they indicate that all servers were treated equally in respect to seating assignments:

- Alex – 17 covers
- Brie – 11 covers
- Carlos – 11 covers
- DJ – 13 covers
- Russell – 17 covers
- Cara – 17 covers

**Angela O'Grady**
Vice President, Tenant Services & COO

655 15th Street, NW
Suite 410
Washington, DC 20005

Phone: (202) 654.7103
Fax: (202) 638.6195
E-mail: aogrady@preferredoffices.com
www.preferredoffices.com

**PREFERRED OFFICES**

*[Handwritten margin notes: Why research the Number of covers at 7:39pm? the incident occured at or around 8:10pm when the restaurant was full, at least As far as my American colleagues were concerned. When that's over handed we had to pleading vote Morgan! to be seated. So what is the Number of covers at 8:10pm? above listed for the writer?]*

As you know, there are many factors that influence the seating assignment of patrons which makes it impossible for all stations to be seated with the exact number of patrons. Some of these factors may include: size of the party, preference of party as to the type of seating (booth vs. table) and time of arrival by various parties.

Based on the information above, I will not be conducting any further investigations. We conclude that you, and the other servers were treated fairly and equally in respect to seating assignments last Saturday.

Sincerely,

*[Signature]* Angie O'Grady

Angie D. O'Grady
Asset Manager, Occidental Restaurant

cc: Dick Carr, President, The Oliver Carr Company

*[Handwritten: * * * If you really want to know The acurate covers count at the time seated a Note pleading to be seated I Handed Kathy Morgan at 8:05pm, you need to ask for a research of covers recorded at 8:15pm, on 2/09/02.]*

# Exhibit C

July 9, 2001

TO: Patsy J. Gross
    The Oliver Carr Company
    Pershing Associates
    655 15th Street, N.W., Suite 410
    Washington, DC 20005

FROM: DJ, server
      at the Occidental

Dear Pat,

This is to confirm to you that I am being retaliated against, for filing an internal complaint of discrimination.

DATE OF LAST INCIDENT: Wednesday july 4th. Just three days after I shook hands with Kathy Kain, and asked her that we work together for the good of the restaurant, she wrote me up again. And incredibly, she wrote me up for something I had nothing to do with.

WRITE UP: On wednesday july 4th, I waited on a lady and her daughter at table 162. And on her way out, the lady complained to management about being pressured by a server into leaving a tip. Automaticly, Kathy Kain assumed that it was me she was complaining about. Therefore, I was called into the office, and written up. This is my second write up, which put me one writte up away from suspension and/or termination. Clearly, she is determined to get me out of here, and she is moving quickly, and swiftly. But there is only one problem. It was not me that the guest was complaining about, but Ron Bozeman, another server. My question is, if the guest complaint was serious enough to warrant writting me up, now that Ron Bozeman is known to be the subject of that guest's complaint, did Kathy Kain wrote him up? If not, then this will proove one more time too many that Kathy Kain will writte me up for anything, but will turn the other way when Ron, Bobby, Bob, Jason, Loren, etc... are involved.

PUTTING ME IN HARM WAY: When I came out of the office that day, I felt pretty beaten up, depressed, and suffering from severe headache. So I asked Rob, an assistant manager, for authorisation to go home, for not feeling good. Rob went into the office to inform Kathy Kain. However, Christian, another assistant manager, came out of the office, and told me " you can't go home ". And he went on to say " Kathy Kain said that if you leave, you can't come back ". So regardless of my health condition, I was forced to work a double shift, 13 hours straight, without a break. There was a lot of frustration, stress, and anger growing inside of me, but I suppressed my emotions, and

completed my shift without a problem.

By the time I finaly got home at midnight, I suffered a serious nervous breakdown. I went to the emergency room at Georgetown University Medical Center, and was immediately admited and hospitalized for 5 days. And the problem? A major deppression. I was released from the hospital today, but I am continuing treatment in an outpatient program, at the end of which, the doctor will let me go back to work.

If you need to talk to servers, I suggest that you do so quickly, because some of the servers are leaving. I think Bob left already. Ron is leaving tomorrow or by thursday. And Jason is leaving this month I beleive.

I thank you in advance for your time.

Devoted to serve you more and better

Djiby Nam, a.k.a. DJ
35 E street, N.W., # 714
Washington, DC 20001
(202) 393 - 0798

CONFIDENTIAL

MONDAY JULY 1st, 20001

TO: PAT GROSS

FROM: DJ, SERVER
         AT THE OCCIDENTAL

RE: THIS IS VERY CONFIDENTIAL

Dear Pat,

As encouraged by management, I tried to relay to Kathy Kain some of my concerns (███████████████████████████), but it backfired. And as a result, the work environment became pretty tense, if not hostile. Therefore, in the best interest of our restaurant, I walked into Kathy Kain office on saturday, june 30, 2001, shooked her hand, and asked her that we work together, for the good of our restaurant.

My coming to you is purely therapatic. I need to get this out of my chest, so I can move on. I feel that I had valid grievances, and I needed a platform to voice those grievances. A platform free of retaliation, intimidation, and threat of termination.

CASE IN POINT: on tuesday june 19, 2001, I was written up for coming to work an hour late. And rightly so, because tardiness must not be tolerated.

But my question is, WHY JUST ME? Since the day I was disciplined for coming to work late, Ron, Jason, Bob, Bobby, and Loren have been repeatedly coming to work late, 20mn to an hour late - some of them daily - but none of them has been written up.

What make it more frustrated for me, is Kathy Kain response to this discrepancy: "It is up to the discretion of the management staff to decide who to writte up, and who not to writte up".

At best, this process is selective. And at worse, it is a case of preferential treatment. You can't writte me up for being late, and turn the other way when my brother Ron, Jason, Bob, Bobby, and Loren commit the same violation. I really feel that company policies should not be enforced selectively. These policies should be enforced equally, fairly, and accross the board.

Kathy Kain also responded by saying that James was also written up for being late. But

again, why writte up James and DJ only for being late, and not Ron, Jason, Bob, Bobby, and Loren who has repeatedly commited the same violation. THESE ARE THE WORSE OFFENDERS.

Moreover, James is a new server. He has not even completed his 90 days probationary period, and already he is coming to work repeatedly late. Me on the contrary, I have been here 3 years. This was my very first lateness, and my first writte up, in my 3 years working for the restaurant. So you can't compare my three years work record with James record, who has been here only a month or 2.

Kathy Kain also defended her action for not writting up Herman and Willy, who were also more than half an hour late, the very same day I was written up for coming to work an hour late. She said that she did not writte them up because they called. But company policies dictate that we call the office 2 hours before our scheduled time, in order to give management ample time to cover our shift, or to cover our opening side work. Neither Herman, nor Willy followed the avobe mentioned procedures in calling late. Therefore, they are still considered late, per company policy, and should have been written up for being more than half an hour late, just like I was. KATHY KAIN Responses "I have designed new guidelines everyday calling in late or out." So she has a company policy, and we have not been notified of those changes. MOREOVER, those guidelines are being inforced and we don't even know what they are. (changed)

Once again, I needed to get this out of my chest, so I can move on. I feel that I was not listened to. Rather, I was being subjected to actions which I consider to be retaliatory. Please do not tell Kathy Kain that I wrote you a letter. I could not survive another threat of termination. I love working here. I love our customers, and they love me. Therefore, his is where I belong.

Kathy Kain and I, have already agreed to put this incident behind us, and work together for the good of the restaurant.

I am closing by saying that I fully support Kathy Kain as the general manager of our Restaurant. We might have some disagreement about how company policies should be enforced, but we both have the same goal. And that is to take this restaurant to a high level.

CONFIDENTIALLY YOURS

*[signature]*

Djiby Nam, aka DJ

# Exhibit D



# OCCIDENTAL

**To:** DJ Nam

**From:** Kathy Kain

**Date:** 2/12/02

**Re:** Final Written Warning

On Saturday, February 9th, you expressed displeasure to the management staff that your section had not been seated as much as other stations. You presented a note to Kathy Morgan that was addressed to Kathy Kain requesting that your station be seated. In response to your concerns, management reviewed the seating records at 7:39pm, and found the following to be the actual number of patrons served thus far for the evening:

- Alex – 17 covers
- Brie – 11 covers
- Carlos – 11 covers
- DJ – 13 covers
- Russell – 17 covers
- Charles – 17 covers

[Handwritten annotation: "This time is wrong. I was sent home immediately after turning in the letter & pleading to be seated. And this was at 8:17 pm."]

When we reported to you that the stations were being seated fairly, you continued to be disruptive in the restaurant. Your disruptions forced Kathy Kain to ask you to leave for the evening. At that point you continued to speak with other employees about the situation further disrupting service in the restaurant. [Handwritten: "which employees"]

The Occidental Management has a policy of seating all stations as equally as possible. It is important that you respect management and the decisions that are made without creating a scene with other employees. [Handwritten: "which employees"]

This is your final warning. If there are any other displays of insubordination or disruption to the service in the restaurant, we will have no other recourse but to terminate our relationship.

[Handwritten at bottom: "I am hereby requesting an investigation. And I am hereby requesting protection against further harassment, retaliation, and differential treatment."]

CONFIDENTIAL

1